**IN RE Willie D. BROWN**

**Selene Finance LP**

v.

**Willie D. Brown**

**CIVIL ACTION NO. 16–11443–RGS**

United States District Court,
D. Massachusetts.

Signed 02/03/2017

Andrea V. Lasker, Robert M. Mendillo, Harmon Law Offices, P.C., Newton, MA, for Selene Finance, LP.

David G. Baker, Boston, MA; for Willie D. Brown.

MEMORANDUM AND ORDER ON AP-
 PEAL FROM THE BANKRUPTCY
 COURT'S CONFIRMATION OF
 DEBTOR'S CHAPTER 13 PLAN

Richard G. Stearns, UNITED STATES DISTRICT JUDGE

This bankruptcy appeal asks whether a Bankruptcy Court in confirming a Chapter 13 plan can force a secured creditor to take title to collateral that it doesn't want. The answer is no. Appellant Selene Finance LP challenges the confirmation of a plan for debtor-appellee Willie D. Brown that required Selene to take title to a property owned by Brown on which it held an unforeclosed mortgage. This practice, known as "forced vesting," has had a mixed reception among bankruptcy and district judges here and elsewhere. For the reasons that follow, the court vacates the Bankruptcy Court's order and remands the matter for further proceedings.

BACKGROUND

The facts are undisputed. Brown filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code in May of 2014. Among Brown's assets was a condominium in Stoughton, Massachusetts, which he had purchased in 2008. At the time Brown filed for bankruptcy, the condo was subject to multiple liens, the weightiest of which was a mortgage held by Bank of America. In June of 2014, Bank of America sought relief from the Bankruptcy Court's stay to conduct a foreclosure sale. The Bankruptcy Court allowed the motion on July 15, 2014. On July 27, 2014, Brown moved to convert his petition from Chapter 7 to Chapter 13. The motion was granted by the Bankruptcy Court in August of 2014.

For unexplained reasons, Bank of America forwent foreclosure proceedings and assigned the mortgage to Selene on October 6, 2014. Selene also had no appetite for foreclosure. Instead, it objected to Brown's proposed Chapter 13 plan, which provided that Brown would surrender the condo to Selene (as Bank of America's successor in interest), with any deficiency claim being treated as unsecured.[1] The plan also stipu-

1. The relevant plan language reads: "Collateral (Condominium unit) will be surrendered pursuant to 11 U.S.C. § 1325(a)(5)(C) in full satisfaction of the secured claim; deficiency

lated that upon confirmation, title to the condo would "vest" in Selene. In its objection, Selene disclaimed any desire to take title, arguing that the Bankruptcy Code does not authorize a court to confirm a plan vesting title to real property in an unwilling creditor. Unimpressed, the Bankruptcy Court overruled the objection and, on June 28, 2016, confirmed the plan. Selene appealed.

On December 6, 2016, while the appeal was pending, Selene informed Brown that it had scheduled a foreclosure sale for December 30. Brown raised no objection, and the sale went ahead as planned. Selene purchased the property at the auction. On January 5, 2017, immediately after Selene informed Brown's counsel of the sale, he recorded a copy of the plan on the condominium's title in the Norfolk County Registry of Deeds. Selene then moved under Federal Rule of Bankruptcy Procedure 8013 and Local Rule 203.8013(d) for an order vacating the vesting provision of the confirmed plan *"nunc pro tune* to June 28, 2016 because the provision is no longer necessary," and for a declaration that "the December 30, 2016 foreclosure sale is not invalid due to the existence of the provision at the time of the sale." Appellant's Mot. for Expedited Determination at 3. Brown objected, arguing that any alteration to the plan would disrupt the orderly administration of the estate by the bankruptcy trustee. This court heard oral argument on Selene's motion and appeal on January 24, 2017.

## DISCUSSION

 Let me begin with Selene's request for a *nunc pro tune* order modifying the plan. As Selene's counsel conceded at oral argument, this motion flies on a wing and a prayer. Neither Rule 8013 nor Local Rule 203.8013(d) awards a district court a roving commission to modify Bankruptcy Court orders without addressing the underlying merits of the appeal. Nor does Rule 8023, which governs the voluntary dismissal of appeals.[2] Rather, the fixed rule is that a plan is binding on the debtor and creditors from the time the plan is confirmed, notwithstanding a creditor's objection. 11 U.S.C. § 1327(a); Fed. R. Bankr. P. 9021. An objecting creditor has the option of seeking a stay pending appeal, Fed. R. Bankr. P. 8007(a)–(b), but Selene sought no such stay. Thus, until this court rules on Selene's appeal, implementation of the plan continues unabated. *Rochman v. Ne. Utils. Serv. Grp. (In re Pub. Serv. Co. of N.H.)*, 963 F.2d 469, 472 (1st Cir. 1992). When Selene foreclosed while the appeal was pending, it did so at the risk that this court would uphold the forced vesting provision.

 As Brown points out, the foreclosure and the lack of a stay pending appeal operate to raise the specter of mootness. Mootness can take one of two forms in the

claim (if any) will be treated as wholly unsecured and paid pro-rata with other unsecured creditors. Upon confirmation, the property shall vest in Bank of America, its successors or assigns, pursuant to § 1322(b)(8) and (9), subject to all other unavoidable liens." App. at 147.

2. Although Rule 8023 provides for a voluntary dismissal "on the appellant's motion on terms ... fixed by the district court," there is nothing in this language that confers on the court the broad-ranging authority envisioned by Selene. The court is aware of no case law supporting Selene's position. If anything, the trend runs in the opposite direction: the relevant language is drawn from Federal Rule of Appellate Procedure 42(b), *see* Fed. R. Bankr. P. 8023 advisory committee's note, and under that rule, parties are generally unable to obtain a modification of a lower-court judgment as part of a voluntary dismissal or settlement, *see* Charles Alan Wright et al., *Federal Practice & Procedure* §§ 3979, 3988.

bankruptcy context: the usual Article III variety and so-called "equitable" mootness, a doctrine peculiar to bankruptcy law. *See id.* at 471. There is no Article III concern in this case: the cloud on Selene's title created by the existence of the plan creates a justiciable dispute. The more pertinent issue is whether the plan has been rendered equitably moot. Under this doctrine, an appellate court may dismiss a bankruptcy appeal if developments have "evolve[d] in reliance on the bankruptcy court order to the degree that their remediation has become impracticable or impossible," or "the challenged bankruptcy court order has been implemented to the degree that meaningful appellate relief is no longer practicable." *Prudential Ins. Co. of Am. v. SW Bos. Hotel Venture, LLC (In re SW Bos. Hotel Venture, LLC)*, 748 F.3d 393, 402 (1st Cir. 2014) (quoting *Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.)*, 136 F.3d 45, 48 (1st Cir. 1998)).

■ Although Brown argues that remand would portend a "nightmarish" scenario in the Bankruptcy Court, there is little or nothing to support a parade of horribles. The mere failure to seek a stay does not establish equitable mootness. *See Mission Product Holds., Inc. v. Old Cold, LLC (In re Old Cold, LLC)*, 558 B.R. 500, 514 (1st Cir. BAP 2016). Nor are the potential burdens created by vacating the plan so crushing as to render the appeal moot. Unlike in cases where equitable mootness has been held to apply, here there are no complex transactions to be unwound. *See, e.g., In re Pub. Serv. Co.*, 963 F.2d at 473–474 (corporate reorganization could not practicably be undone where "all but one mortgage and all indentures, securities and associated agreements and encumbrances relating to the PSNH prepetition indebtedness were released and the lone remaining mortgage encumbrance was substantially modified" and large

quantities of securities had been distributed); *ROK Builders, LLC v. 2010–1 SFG Venture, LLC*, 2013 WL 3762678, at *6–7 (D.N.H. July 16, 2013) (appeal equitably moot where bankrupt company had been dissolved, its property and cash transferred to other parties, and third parties had acted in reliance on the plan). The universe of creditors potentially affected by alterations to Brown's plan is relatively small, and the burdens of confirming a new plan are further eased by Selene's representation at the hearing that it would not object to a plan identical in every respect to the current one except for the excision of the forced vesting provision. Vacating the plan to nullify the vesting provision would enable Selene to clear title to the property, so this appeal would provide effective relief. Consequently, the court concludes that the appeal is not equitably moot.

■ Turning to the merits, the issue of forced vesting has engendered controversy. In addition to the court below, one other Massachusetts bankruptcy judge has ruled that forced vesting is permissible, *see In re Sagendorph*, 2015 WL 3867955 (Bankr. D. Mass. June 22, 2015), while two Massachusetts bankruptcy judges have concluded that it is not, *see In re Tosi*, 546 B.R. 487 (Bankr. D. Mass. 2016); *In re Weller*, 548 B.R. 392 (Bankr. D. Mass. 2016). The overwhelming run of cases, however, has rejected forced vesting. *Sagendorph* was recently overturned on appeal to the district court. *See Wells Fargo Bank, NA. v. Sagendorph (In re Sagendorph)*, 562 B.R. 545 (D. Mass. 2017). Two district courts in other circuits have likewise vacated plans with forced vesting provisions. *See HSBC Bank USA v. Zair*, 550 B.R. 188 (E.D.N.Y. 2016); *Bank of N.Y. Mellon v. Watt*, 2015 WL 1879680 (D. Or. Apr. 22, 2015). Bankruptcy courts outside of Massachusetts have also generally es-

chewed forced vesting. *See, e.g., In re Sherwood*, 2016 WL 355520 (Bankr. S.D.N.Y. Jan. 28, 2016) (denying confirmation to a plan containing a forced vesting provision); *In re Williams*, 542 B.R. 514 (Bankr. D. Kan. 2015) (rejecting debtor's request to vest property in mortgagee where confirmed plan provided for surrender); *In re Rose*, 512 B.R. 790 (Bankr. W.D.N.C. 2014) (same).

■ The legitimacy of forced vesting turns on the relationship between two provisions of Chapter 13. Because this is a pure question of statutory interpretation, this court's review of the issue is de novo. *See Berliner v. Pappalardo (In re Puffer)*, 494 B.R. 1, 4 (D. Mass. 2013).

The parties agree that under 11 U.S.C. § 1325(a)(5), a Chapter 13 debtor's proposed plan must treat secured creditors in one of three ways. The first two are not at issue here: a secured creditor can either accept a plan or the plan can provide for a "cramdown" of secured debts. *Id.* § 1325(a)(5)(A)–(B). The third, which was invoked in Brown's plan, allows confirmation where "the debtor surrenders the property securing such claim to such holder." *Id.* § 1325(a)(5)(C). Brown's plan attempts to pair the "surrender" option under § 1325(a)(5)(C) with one of the optional plan elements outlined in 11 U.S.C. § 1322(b). Specifically, Brown relies on § 1322(b)(9), which specifies that a plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity."

■ The issue is thus whether a plan can pair vesting and surrender. Like all questions of statutory interpretation, the inquiry begins with the plain text of the statute. *Carcieri v. Salazar*, 555 U.S. 379, 387, 129 S.Ct. 1058, 172 L.Ed.2d 791 (2009). Although neither term is defined in the Bankruptcy Code, the Bankruptcy Court recognized (and the parties agree)

that "surrender" and "vest" have clear and distinct meanings. To "surrender" is to make a piece of collateral available to a secured creditor so that the creditor can exercise its rights in the collateral. *See Canning v. Beneficial Me., Inc. (In re Canning)*, 706 F.3d 64, 69–70 (1st Cir. 2013) (interpreting term in 11 U.S.C. § 521(a)(2)); *In re Sagendorph*, 562 B.R. at 552 (interpreting 11 U.S.C. § 1325(a)(5)(C)); *In re Williams*, 542 B.R. at 518 (same). "Vesting" is to "place one in legal possession or ownership of property," that is, "transferring title." *In re Sagendorph*, 2015 WL 3867955, at *2; *accord Bank of N.Y. Mellon*, 2015 WL 1879680, at *4; *In re Williams*, 542 B.R. at 518.

Brown begins with the plain language of § 1322(b)(9). That provision permits a debtor's Chapter 13 plan to vest property in entities other than the debtor, and says nothing about a creditor's consent. Thus, Brown argues, so long as the plan provides for a surrender under § 1325(a)(5)(C), Selene has no grounds to object to a non-consensual vesting. Moreover, he asserts, the surrender and vesting provisions are reconcilable because surrender "is a preliminary step in the process of transferring title." *In re Sagendorph*, 2015 WL 3867955, at *4. Consequently, because his plan properly provided for the surrender of his property interest to Selene under § 1325(a)(5)(C), the Bankruptcy Court was compelled to confirm his plan. *See Hamilton v. Wells Fargo Bank, NA. (In re Hamilton)*, 401 B.R. 539, 542 (1st Cir. BAP 2009).

This syllogism underweights the tension between surrender and vesting. A surrender, by definition, leaves the mortgagee free to exercise its rights in the collateral. Vesting, however, threatens to impair those same rights. By shifting the debtor's interest to the mortgagee, vesting prevents the mortgagee from exercising its most important state-law right—foreclo-

sure—as a method of eliminating junior liens. *See HSBC Bank*, 550 B.R. at 202; *In re Tosi*, 546 B.R. at 493. Vesting also forces a mortgagee to assume risks and obligations—such as environmental remediation, maintenance, or taxes—that it would not bear in the absence of vesting. *See In re Tosi*, 546 B.R. at 493; *In re Williams*, 542 B.R. at 521. Vesting compromises the very rights that surrender permits the mortgagee to exercise, and "[s]urrender of collateral to a mortgagee and vesting of the same collateral in the mortgagee are thus mutually exclusive." *In re Tosi*, 546 B.R. at 494. The confirmed plan therefore does not treat Selene's secured claim in a manner permitted by § 1325(a)(5).

Brown concedes that vesting might impair Selene's rights in the collateral, but he says this is simply an application of the principle that the Bankruptcy Code displaces or modifies conflicting state-law rights in the name of federal supremacy. *See generally Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507 (1918). Preemption has special relevance here, he contends, because Selene's foot-dragging left him saddled with the property, thereby crimping the "fresh start" policy which is at the heart of bankruptcy law. *See Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007). This concern has become even more acute in the wake of the collapse of the housing market in 2008, which left many homeowners owing more on mortgages than their homes were worth and many mortgagees unwilling to foreclose on underwater properties. *See In re Weller*, 548 B.R. at 393, 396. This case, where two and a half years elapsed between the Bankruptcy Court's relief from stay and Selene's foreclosure, illustrates the consequences of delay.

 Although compelling as a matter of policy, this argument falls flat in light of the text of § 1325(a)(5)(C). It is of course true that a state-law right is preempted by a contrary provision of the Bankruptcy Code. *See Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d 677, 681 (1st Cir. 1999). Here, however, Congress used the term "surrender," which has a specific and undisputed meaning that preserves a secured creditor's state-law rights. In light of the statutory text, the fresh start policy must give way to "the Code's obvious goal of preserving the well-settled property rights of secured lenders." *HSBC Bank*, 550 B.R. at 204.

### ORDER

For the foregoing reasons, Selene's motion for expedited determination of the appeal (Dkt # 13) is <u>DENIED</u>. The order confirming Brown's plan is <u>VACATED</u> and the case is <u>REMANDED</u> to the Bankruptcy Court for further proceedings consistent with this opinion.

SO ORDERED.