**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| BANK OF NEW YORK MELLON, *Plaintiff-Appellee*, <br><br> v. <br><br> NICHOLAS LEE WATT; PATRICIA MOUDY WATT, *Debtors-Appellants.* | No. 15-35484 <br><br> D.C. No. 3:14-cv-02051-AA <br><br><br> OPINION |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, District Judge, Presiding

Argued and Submitted July 11, 2017
Portland, Oregon

Filed August 16, 2017

Before: Marsha S. Berzon, Paul J. Watford,
and John B. Owens, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Bankruptcy

The panel dismissed for lack of jurisdiction debtors' appeal from the district court's order vacating the bankruptcy court's confirmation of their chapter 13 plan and remanding the matter to the bankruptcy court.

The panel held that under *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686 (2015), the district court's order was not final and appealable because it did not finally dispose of a discrete dispute within the bankruptcy case. The panel wrote that the parties could have sought circuit review by requesting certification of an interlocutory appeal under 28 U.S.C. § 1292(b) or § 158(d)(2) or could have appealed a more recent plan confirmation.

### COUNSEL

Michael D. O'Brien, Jr. (argued) and Theodore J. Piteo, Michael D. O'Brien & Associates P.C., Portland, Oregon, for Debtors-Appellants.

Crystal S. Chase (argued) and Oren B. Haker, Stoel Rives LLP, Portland, Oregon, for Plaintiff-Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Britte E. Warren and Matthew D. Colley, Black Helterline LLP, Portland, Oregon, for Amicus Curiae Meritage Homeowners' Association.

---

**OPINION**

BERZON, Circuit Judge:

We address whether we have jurisdiction over an appeal from a district court order vacating the bankruptcy court's confirmation of a Chapter 13 plan. We conclude that we do not, and accordingly dismiss.

**I. BACKGROUND**

In 2006, Nicholas and Patricia Watt purchased a second home in a planned community in Newport, Oregon ("the Property"). Like the other houses in the community, the Property was subject to covenants, conditions, and restrictions ("CCRs") enforced by the Meritage Homeowners' Association. Oregon corporation Mortgage Trust, Inc. loaned the Watts $296,940 to finance their purchase; later, Mortgage Trust transferred its security interest to the Bank of New York Mellon ("BNY Mellon").

Beginning in 2007, the financial crisis left many homeowners unable to meet their mortgage payments and other financial obligations. The Watts were among such homeowners. By the time they filed for bankruptcy, there were several liens on their Property. BNY Mellon, owed at least $346,000, held a first position lien. Bank of America NA held a second consensual mortgage lien, in the amount of approximately $34,000. Meritage Homeowners' Association

held a judgment lien against the property for approximately $225,000, as well as a statutory lien arising under the Meritage CCRs and the Oregon Planned Community Act for unpaid assessments and charges.

In March 2014, the Watts filed a Chapter 13 bankruptcy petition, seeking to reorganize their personal finances over a five-year period. There was no equity in the Property: its value, reported as $271,220, was significantly less than the amount of secured claims against it. After proposing two initial plans, to which Meritage objected, the Watts filed an amended plan ("Plan") in June 2014. The Plan included a nonstandard provision[1] mandatorily vesting title to the Property in BNY Mellon, but specifying that "vesting shall not merge or otherwise affect the extent, validity, or priority of any liens on the property." BNY Mellon opposed the mandatory vesting provision and objected to confirmation of the Plan.

Following an evidentiary hearing, the bankruptcy court confirmed the Plan. The court concluded that a plan vesting title in a secured creditor could properly be confirmed over that creditor's objection. BNY Mellon appealed to the district court, which disagreed with the bankruptcy court and held that a Chapter 13 plan cannot require an unconsenting creditor to take title to property. The Watts requested a rehearing, but the district court denied the request. The Watts then appealed to this Court.

---

[1] A "nonstandard" provision in a Chapter 13 bankruptcy plan is a special provision, not otherwise included in the Official Form, that is applicable to the particular circumstances of the debtor.

While this appeal was pending, the Watts proposed to the bankruptcy court a sale of the Property to BNY Mellon, as authorized by 11 U.S.C. § 363(b), and submitted an amended bankruptcy plan. The bankruptcy court approved the § 363 sale and confirmed the new plan.

## II. DISCUSSION

### A. The district court order vacating confirmation is not a final appealable order.

Both parties submit that the order on appeal is final. Nonetheless, we have "an independent duty to examine our own subject matter jurisdiction." *In re Bonner Mall P'ship*, 2 F.3d 899, 903 (9th Cir. 1993). We have jurisdiction to determine our jurisdiction. *See, e.g.*, *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1128 (9th Cir. 2009).

In ordinary civil litigation, parties typically have a right to appeal only "final decisions of the district courts." 28 U.S.C. § 1291. In bankruptcy, the rules are somewhat relaxed: appeals are permitted not only from final judgments but also from orders that "finally dispose of discrete disputes within the larger case." *Bullard v. Blue Hills Bank*, 135 S. Ct. 1686, 1692 (2015) (quoting *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 657 n.3 (2006)). Still, proceedings must be to that degree final to be appealable; without additional authorization, parties may appeal only "final decisions, judgments, orders, and decrees" entered by a district court or a bankruptcy appellate panel. 28 U.S.C. § 158(d). Because the district court did not "finally dispose of [a] discrete dispute[]" when it vacated the order confirming the plan and remanded to the bankruptcy court, we conclude

that the district court's order was not "final" for purposes of appellate jurisdiction.

The Supreme Court recently clarified the meaning of finality in the context of § 158 jurisdiction. Under 28 U.S.C. § 158(a)(1), district courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" entered by bankruptcy courts. The Court held in *Bullard* that a bankruptcy court's denial of confirmation of a proposed Chapter 13 repayment plan was not a final appealable order for the purposes of § 158(a)(1) because it did not "finally dispose of [a] discrete dispute." 135 S. Ct. at 1692. When the bankruptcy court in *Bullard* rejected one particular proposed plan, it did not "alter[] the status quo" or "fix[] the rights and obligations of the parties." *Id.* "The relevant 'proceeding' . . . is the entire process of considering plans, which terminates only when a plan is confirmed or . . . when the case is dismissed." *Id*. Until plan confirmation or a dismissal, the confirmation proceeding remains ongoing and there is no final order to appeal.

Although *Bullard* concerned the jurisdiction of the district court under § 158(a) rather than the jurisdiction of the court of appeals under § 158(d), the logic of *Bullard* does not turn on whether the bankruptcy court or the district court declared the plan unconfirmable. "Th[e] interpretation of finality in bankruptcy cases determines the scope of the district court and [bankruptcy appellate panel]'s authority to hear appeals 'from final judgments, orders, and decrees' under § 158(a)(1) as well as our authority to hear 'appeals from all final decisions, judgments, orders, and decrees' of bankruptcy judges entered by the district court and BAP under § 158(d)(1), which are governed by the same constraints." *In re Gugliuzza*, 852 F.3d 884, 893 (9th Cir. 2017).

Before *Bullard*, this Court sometimes exercised jurisdiction over appeals from district court decisions addressing purely legal questions and remanded to the bankruptcy court for further fact-finding. *See, e.g.*, *In re Bonner Mall P'ship*, 2 F.3d 899. *Bullard*, however, raised the bar for finality. As we recently held, after *Bullard*, district court orders remanding to bankruptcy courts for further fact-finding are rarely final appealable orders; one exception is when the "remand order is limited to 'purely mechanical or computational'" or similarly "ministerial tasks." *In re Gugliuzza*, 852 F.3d at 895, 897; *see also In re Landmark Fence Co.*, 801 F.3d 1099, 1103 (9th Cir. 2015) (internal quotation and citation omitted).

In this case, the district court vacated the bankruptcy court's confirmation of the Watts' Chapter 13 plan and remanded to the bankruptcy court, requiring the parties to propose a different solution for disposal of the Property. Unlike confirmation of a plan, the district court's determination that the plan was *not* confirmable did not "fix[] the rights and obligations of the parties." *Bullard*, 135 S. Ct. at 1692. Rather, the district court's order prompted negotiations between the parties to continue until a new form of disposition of the Property was approved and carried out, and a new determination entered by the district court as to whether to confirm that plan.

Because the district court order here appealed was not final, appellate jurisdiction does not lie.

## B. The Watts had other opportunities to seek circuit court review.

We do not doubt that the validity of a mandatory vesting provision is an important and recurring legal question.[2] We emphasize that the finality requirement for appellate jurisdiction does not preclude appellate review of such questions. But the parties in this case had alternative channels for seeking appellate court review which were not used.

Both the certification methodologies in the general interlocutory appeals statute, 28 U.S.C. § 1292(b), and the bankruptcy-specific certification procedures, 28 U.S.C. § 158(d)(2), allow for interlocutory review of questions of law with the requisite court permissions.

---

[2] In the wake of the mortgage foreclosure crisis, several courts have been confronted with the question of whether a debtor may require a creditor to take title to collateral, over that creditor's objection. *See, e.g.*, *In re Sagendorph*, 562 B.R. 545 (D. Mass. 2017); *In re Brown*, 563 B.R. 451 (D. Mass. 2017); *In re Zair*, 550 B.R. 188 (E.D.N.Y. 2016), *appeal dismissed* Nov. 15, 2016*; In re Tosi*, 546 B.R. 487 (Bankr. D. Mass. 2016)*; In re Arsenault*, 456 B.R. 627 (Bankr. S.D. Ga. 2011). Commentators have noted the lack of legal clarity on this question. *See, e.g.*, Andrea Boyack & Robert Berger, *Bankruptcy Weapons to Terminate a Zombie Mortgage*, 54 Washburn L.J. 451, 469–73 (2015) (stating that "[t]he Code's provisions and the general equitable powers of a bankruptcy court can *perhaps* force a lender to take title") (emphasis added); David P. Weber, *Zombie Mortgages, Real Estate, and the Fallout for the Survivors*, 45 N.M. L. Rev. 37, 58 (2014) (describing the "creative attempts" that borrowers have made to "flee their zombie mortgages," which have given rise to legal disputes); Amanda McQuade, Comment, *The Antidote to Zombie Foreclosures: How Bankruptcy Courts Should Address the Zombie Foreclosure Crisis*, 32 Emory Bankr. Dev. J. 507, 526 (2016) (stressing the need for courts "to clarify the inconsistencies within the case law" regarding the validity of forced vesting).

Section 1292(b) offers a general discretionary exception to the finality rules, permitting circuit courts to exercise jurisdiction over an appeal from an order that "involves a controlling question of law as to which there is substantial ground for difference of opinion" when the district court has so requested and when "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (holding that § 1292 applies also to bankruptcy jurisdiction and is not displaced by § 158(d)). With the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Congress elaborated the certification procedure in light of bankruptcy's two-tiered appellate structure. Section 158(d)(2)(A) confers discretionary jurisdiction on the circuit courts if the bankruptcy court, district court, or bankruptcy appellate panel, or all the appellants and appellees acting jointly, "certify that—(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken." 28 U.S.C. § 158(d)(2)(A). When any of those criteria is met, we may exercise our discretion to take jurisdiction, as we have previously done. *See, e.g.*, *Blausey*, 552 F.3d at 1131–32.

These various certification methodologies were all foregone here. Neither party requested that the bankruptcy

court or district court certify the case, nor did the parties jointly certify the case.[3]

In addition to certification, another review mechanism was also available to the parties and was foregone: appeal from the most recent plan confirmation. Following the post-remand § 363 sale of the Property to BNY Mellon, the debtors proposed a new bankruptcy plan. In October 2016, the bankruptcy court issued an order confirming that new plan.

*Bullard* specifically permits debtors seeking appellate review to propose an amended plan and appeal its confirmation, even when "confirmation [may] have immediate and irreversible effects," as the § 363 sale arguably did here. 135 S. Ct. at 1695; *see also In re O&S Trucking, Inc.*, 811 F.3d 1020, 1024 (8th Cir. 2016) (holding that a debtor could have standing to appeal confirmation of a plan under the "person aggrieved" standard, provided the debtor registered his objection during plan confirmation). If the Watts believed that the October 2016 plan did not give them the debt relief to which they were entitled, they could have objected to confirmation; assuming the bankruptcy court confirmed the plan over their objection, they could have subsequently appealed the confirmation. The confirmation order provided fifteen days in which to object before the plan became effective. The Watts did not register an objection to

---

[3] Section 158(d)(2)(B) provides that if a bankruptcy court, district court, or bankruptcy appellate panel determines that any one of the § 158(d)(2)(A) criteria is satisfied, or receives a request to make the certification from a majority of the appellants and a majority of the appellees, then the court "shall make the certification." 28 U.S.C. § 158(d)(2)(B).

confirmation of the amended plan, nor did they appeal the final order confirming that plan to the district court or to a bankruptcy appellate panel. *See* Fed. R. Bankr. P. 8002(a)(1) (establishing a fourteen-day window within which to file appeals of bankruptcy court orders).[4]

In short, the Watts had several ways to seek this Court's approval of a mandatory vesting provision in a Chapter 13 reorganization plan. They bypassed the available opportunities for review and instead sought improperly to appeal a non-final district court order. We have no jurisdiction over the appeal they brought before us.

## CONCLUSION

When a district court vacates a bankruptcy court order confirming a bankruptcy plan and remands for further proceedings, there is no final order sufficient to confer jurisdiction under 28 U.S.C. § 158(d). We therefore **DISMISS** the debtors' appeal for lack of jurisdiction.

**DISMISSED.**

---

[4] We do not address whether an appeal following the § 363 sale would have been equitably moot. The prudential doctrine of equitable mootness may apply when bankruptcy cases "present transactions that are so complex or difficult to unwind." *In re Lowenschuss*, 170 F.3d 923, 933 (9th Cir. 1999). To determine whether a case is equitably moot, we apply a four-factor test, looking to (1) whether a stay was sought; (2) if a stay was sought and not gained, whether substantial consummation of the plan has occurred; (3) what effect a remedy would have on third parties not before the court; and (4) whether the bankruptcy court can fashion effective and equitable relief. *See In re Transwest Resort Props., Inc.*, 801 F.3d 1161, 1167–68 (9th Cir. 2015); *In re Thorpe Insulation Co.*, 677 F.3d 869, 881 (9th Cir. 2012).