**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: JOHN C. KIRKLAND; POSHOW ANN KIRKLAND, as Trustee of the Bright Conscience Trust dated September 9, 2009. | No. 22-70092 |
| | B.C. No. 2:12-ap-02424-ER |
| JOHN C. KIRKLAND; POSHOW ANN KIRKLAND, as Trustee of the Bright Conscience Trust dated September 9, 2009, | OPINION |
| *Petitioners*, | |
| v. | |
| UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA (LOS ANGELES), | |
| *Respondent*, | |
| JASON M. RUND, Chapter 7 Trustee, | |
| *Real Party in Interest*. | |

Petition for a Writ of Mandamus

Argued and Submitted October 4, 2022
Pasadena, California

Filed July 27, 2023

Before: Danielle J. Forrest and Gabriel P. Sanchez, Circuit Judges, and Nancy D. Freudenthal,[*] District Judge.

Opinion by Judge Forrest

**SUMMARY**[**]

**Mandamus Petition / Civil Procedure**

The panel granted a petition for a writ of mandamus and ordered the United States Bankruptcy Court for the Central District of California to quash trial subpoenas requiring petitioners to testify via contemporaneous video transmission from their home in the U.S. Virgin Islands.

The bankruptcy court ordered Poshow Ann Kirkland, a party in her capacity as sole trustee for the Bright Conscience Trust, and John Kirkland, a non-party witness, to testify at a trial regarding claims brought against the Trust in an adversary proceeding. The Kirklands moved to quash their

---

[*] The Honorable Nancy D. Freudenthal, United States District Judge for the District of Wyoming, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

trial subpoenas because they violated the geographic limitations set forth in Federal Rule of Civil Procedure 45(c). The bankruptcy court denied the motion to quash on the grounds that, under Rule 43(a), good cause and compelling circumstances warranted ordering the Kirklands' remote testimony.

Rule 45(c) provides that a person can be commanded to attend a trial within 100 miles of where the person resides, is employed, or regularly transacts business in person. Rule 45(c) further provides that a person can be commanded to attend a trial within the state where the person resides, is employed, or regularly transacts business in person if the person is party or a party's officer and would not incur substantial expense. Rule 43(a) provides that testimony must be taken in open court, but remote testimony may be allowed for good cause in compelling circumstances and with appropriate safeguards.

The panel held that the bankruptcy court erred in refusing to quash the trial subpoenas because, under the plain meaning of the text of the Rules, the geographic limitations of Rule 45(c) apply even when a witness is permitted to testify by contemporaneous video transmission. The panel concluded that Rule 45(c) governs the court's power to require a witness to testify at trial and focuses on the location of the proceeding, while Rule 43(a) governs the mechanics of how trial testimony is presented.

Weighing the *Bauman* factors to determine whether issuance of a writ of mandamus was appropriate, the panel concluded that the third factor, clear error, weighed in favor of granting mandamus relief. The panel concluded that the fifth *Bauman* factor also weighed in favor because the petition presented an important issue of first impression,

requiring the construction of a federal procedural rule in a new context, given the recent proliferation of videoconference technology in all types of judicial proceedings.  The panel held that the third and fifth *Bauman* factors were sufficient on their own to warrant granting mandamus relief in this case.  The panel further concluded that the first *Bauman* factor, the availability of alternate means of relief, did not weigh heavily against granting mandamus relief; the second factor, the likelihood of irreparable harm, supported granting relief; and, because the fifth factor strongly weighed in favor, it was not necessary to analyze in depth the fourth factor, whether the case involved an oft-repeated error.

**COUNSEL**

Steven S. Fleischman (argued), Peter K. Batalden, and Jason R. Litt, Horvitz & Levy LLP, Burbank, California; Lewis R. Landau, Law Office of L. Landau, Calabasas, California; Stephen E. Hyam, Hyam Law APC, Granada Hills, California; for Petitioners.

Corey R. Weber (argued), Ryan F. Coy, and Steven T. Gubner, BG Law LLP, Woodland Hills, California, for Real Party in Interest Jason M. Rund, Chapter 7 Trustee.

**OPINION**

FORREST, Circuit Judge:

Petitioners John and Poshow Ann Kirkland moved to quash trial subpoenas issued by the United States Bankruptcy Court for the Central District of California, requiring them to testify via contemporaneous video transmission from their home in the U.S. Virgin Islands. The bankruptcy court denied their motions, and the Kirklands seek mandamus relief from this court. The Kirklands argue that Federal Rule of Civil Procedure 45(c)(1) prohibits the bankruptcy court from compelling them to testify, even remotely, where they reside out of state over 100 miles from the location of the trial. Mindful of the "extraordinary nature" of mandamus relief, *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 538 (9th Cir. 2020), we conclude that it is warranted here as the Kirklands present a novel issue involving the interplay of two Federal Rules of Civil Procedure that has divided district courts across the country and that is likely to have significant continued relevance in the wake of technological advancements and professional norms changing how judicial proceedings are conducted. Moreover, because the scope of the court's subpoena power is a collateral matter, this issue is likely to evade direct appellate review. *See Perry v. Schwarzenegger*, 591 F.3d 1147, 1158–59 (9th Cir. 2010). Therefore, we grant the Kirklands' mandamus petition and order the bankruptcy court to quash their trial subpoenas.

## I. BACKGROUND

The underlying litigation has a lengthy and complex history. We summarize only those facts relevant to the Kirklands' mandamus petition.

### A. EPD Investments' Bankruptcy

The Kirklands are a married couple. Between 2007 and 2009, Mr. Kirkland invested in EPD Investments (EPD) by making a series of loans to this entity (EPD Loans). The negotiations for the EPD Loans occurred in California where the Kirklands lived at the time. In September 2009, the Kirklands created the Bright Conscience Trust (BC Trust) for their minor children, and Mr. Kirkland assigned the EPD Loans to BC Trust. Mrs. Kirkland is the sole trustee for BC Trust. Also in 2009, Mr. Kirkland began serving as EPD's lawyer.

In December 2010, EPD's creditors forced it into involuntary Chapter 7 bankruptcy. Mr. Kirkland initially represented EPD in the bankruptcy proceedings. BC Trust filed proofs of claim in EPD's bankruptcy case based on the EPD Loans; Mr. Kirkland did not file an individual proof of claim.

The bankruptcy court appointed a Chapter 7 trustee. In October 2012, the trustee initiated the adversary proceeding underlying this petition against Mr. Kirkland and BC Trust in the United States Bankruptcy Court for the Central District of California. Four years later, the trustee filed the operative fourth amended complaint, seeking to disallow or equitably subordinate BC Trust's proofs of claim and to avoid allegedly fraudulent transfers that EPD made to Mr. Kirkland and BC Trust in the form of mortgage payments on the Kirklands' home. Specifically, the trustee alleged that EPD was a Ponzi scheme and that Mr. Kirkland, while acting as its outside counsel, was aware of and engaged in inequitable conduct to hide the company's insolvency. The trustee further alleged that Mr. Kirkland's misconduct should be imputed to BC Trust and the trust's proofs of claim

disallowed or subordinated because BC Trust did not separately invest in EPD and was merely the assignee of Mr. Kirkland's interests in EPD. By 2014, the Kirklands had moved to the U.S. Virgin Islands. Nonetheless, they agreed to be deposed in Los Angeles in June 2017.

After Mr. Kirkland asserted his right to a jury trial on the fraudulent-transfer claims asserted against him, the district court withdrew the reference of the entire adversary proceeding from the bankruptcy court because of the commonality and overlap between the claims asserted against Mr. Kirkland and BC Trust. *In re EPD Inv. Co.*, 594 B.R. 423, 426 (C.D. Cal. 2018). The district court then bifurcated for trial the fraudulent-transfer claims against Mr. Kirkland from the other claims asserted against BC Trust. The Kirklands both testified in person at Mr. Kirkland's fraudulent-transfer trial held in California, and the jury returned a verdict in his favor.

Afterwards, the district court dismissed the trustee's equitable-subordination claim against Mr. Kirkland and returned the claims against BC Trust to the bankruptcy court. The district court explained that the bankruptcy court could rely on the testimony provided during the jury trial in adjudicating the claims against BC Trust but "[i]f the [b]ankruptcy [c]ourt determines that it needs substantial testimony from non-parties that would not be necessary if this [c]ourt were to try the matter . . ., the parties may seek reconsideration of [the return] on that ground." In the proceedings against BC Trust, Mrs. Kirkland is a party in her capacity as sole trustee and Mr. Kirkland is a non-party witness.

## B. The Kirklands' Trial Subpoenas

The bankruptcy court determined that it was necessary for the Kirklands to testify at BC Trust's trial, and it authorized the trustee to serve the Kirklands with trial subpoenas by certified mail and publication commanding them to testify remotely via video transmission from the U.S. Virgin Islands. The Kirklands each moved to quash their trial subpoenas, primarily arguing that they violated Federal Rule of Civil Procedure 45(c)'s geographic limitations.

The bankruptcy court denied the Kirklands' motions to quash, concluding that "good cause and compelling circumstances" warranted requiring their testimony "by way of contemporaneous video transmission" under Federal Rule of Civil Procedure 43(a). The bankruptcy court analyzed the split among district courts regarding "whether Civil Rule 45's geographical restriction applies if a witness is permitted to testify by videoconference from a location chosen by the witness."[1] The bankruptcy court recognized that it could not compel the Kirklands to attend the trial in person because they now live in the Virgin Islands. And it reasoned that "[w]here a witness has been ordered to provide remote video

---

[1] There appear to be three different approaches regarding whether a witness may be compelled to testify remotely from a location that is beyond Rule 45(c)'s 100-mile geographic limitation. *See, e.g.*, *Off. Comm. of Unsecured Creditors v. CalPERS Corp. Partners LLC*, 2021 WL 3081880, at *2 (D. Me. July 20, 2021) (listing cases). First, some courts have held that Rule 45(c)'s geographic limitation is firm, and Rule 43(a) cannot be an end-run around it. *Id.* Second, some courts have held that an order requiring remote appearance under Rule 43(a) automatically satisfies Rule 45(c)'s geographical limitation because it does not compel the witness to travel more than 100 miles. *Id.* And third, some courts have held that Rule 43(a) may be used to compel remote testimony from a location within 100 miles of the witness's residence, but only upon a showing of good cause in compelling circumstances. *Id.*

testimony transmitted from the witness's home (or another location chosen by the witness)" under Rule 45(c), "that witness has not been compelled to attend a trial located more than 100 miles from the witness's residence." Thus, the bankruptcy court found that the challenged subpoenas satisfied Rule 45(c) because "the purpose of [Rule 45] is to protect witnesses from the burden of extensive travel."

The bankruptcy court heavily relied on its prior ruling granting the trustee's motion in limine to exclude transcripts of the Kirklands' depositions and testimony given in Mr. Kirkland's trial. BC Trust had informed the bankruptcy court that it intended to introduce these transcripts because the Kirklands were unwilling to travel to California to testify at BC Trust's trial and they could not be compelled to testify because they live more than 100 miles from the bankruptcy court. BC Trust argued that the Kirklands were "unavailable" under Federal Rule of Evidence 804, and the transcripts of their prior testimony were therefore admissible hearsay. The bankruptcy court disagreed that a hearsay exception applied because it concluded that the Kirklands' "unavailability . . . has been engineered by the BC Trust for purely strategic purposes."

The bankruptcy court also reasoned that "the prior transcripts would be insufficient because certain testimony relevant to the equitable subordination claim was not introduced" at Mr. Kirkland's trial, and additional testimony was necessary. Additionally, in determining whether BC Trust engaged in any inequitable conduct, the bankruptcy court concluded that it needs to "assess the credibility of [the Kirklands], which [it] cannot do based solely on transcripts."

After the bankruptcy court made its in limine ruling, the Kirklands moved the district court to reconsider its return

order and withdraw reference to the bankruptcy court. The district court denied the Kirklands' motion, explaining that in returning the proceedings to the bankruptcy court, it did not mandate that the bankruptcy court rely only on prior testimony and explicitly acknowledged that additional testimony may be needed in adjudicating the claims against BC Trust. The district court further directed that if the Kirklands failed to attend trial, the bankruptcy court would be "entitled to make whatever adverse findings it sees fit."

Lastly, the bankruptcy court detailed its positive experience with witnesses appearing remotely at proceedings conducted during the COVID-19 pandemic. The bankruptcy court explained that, in its view, remote testimony is an adequate substitute for in-person testimony because with technological advancements "there is little practical difference between in-person testimony and testimony via videoconference." For all these reasons, the bankruptcy court concluded that "good cause and compelling circumstances" warranted ordering the Kirklands to testify remotely.

## C. The Kirklands' Attempted Appeal

After the bankruptcy court refused to quash the trial subpoenas, the Kirklands moved the bankruptcy court to certify an immediate interlocutory appeal to this court under 28 U.S.C. § 158(d)(2), or to the district court under § 158(a)(3). The bankruptcy court also denied this motion. The bankruptcy court concluded that the circumstances did not "justify an interlocutory appeal that would result in yet more delay." The bankruptcy court acknowledged that there was no controlling authority establishing that Rule 45 applies to remote testimony, but it nonetheless determined that the utility of certifying an interlocutory appeal was

outweighed by the "need to finally bring this litigation to an end." The bankruptcy court also reasoned that certification was inappropriate because its denial of the Kirklands' motions to quash was based on factual findings related to its "compelling circumstances" and "good cause" analysis, not just legal conclusions.

The bankruptcy court denied the Kirklands' alternative request for leave to file an interlocutory appeal in the district court as "highly unusual" where the district court's decision would not be binding beyond the subject case and one of the main purposes of certification is to produce binding authority on unresolved questions of law. The Kirklands did not seek leave from the district court or the Ninth Circuit Bankruptcy Appellate Panel (BAP) to pursue an interlocutory appeal in either of those forums, as allowed under 28 U.S.C. § 158(a)(3), (b)(1).

## D. Petition for a Writ of Mandamus

In May 2022, the Kirklands petitioned this court for a writ of mandamus directing the bankruptcy court to quash their trial subpoenas.[2] They argue that Rule 45(c) limits the subpoena power over both parties and non-parties who reside within 100 miles of the trial location unless they are employed or regularly transact business in the state where the trial occurs. The Kirklands contend that the bankruptcy court erred by relying on Rule 43(a) in ordering them to testify remotely because "Rule 43(a) governs the mechanical question of taking testimony, not the substantive question of which witnesses may be compelled to testify." They argue that whether remote testimony is permissible under Rule

---

[2] The bankruptcy proceeding is stayed pending our determination of the Kirklands' petition.

43(a) "is entirely irrelevant to whether a party can be compelled to comply with a subpoena under Rule 45(c)."

The trustee, as the real party in interest, opposes the Kirklands' petition. The trustee argues that the bankruptcy court's order does not raise a purely legal issue regarding the scope of the subpoena power under Rule 45(c), as the Kirklands contend, but instead is based on a factual finding of "good cause in compelling circumstances" under Rule 43(a). The trustee also argues that although no court of appeals "has considered the interplay between Rule 43(a) and Rule 45(c)," any such interplay is immaterial and mandamus relief is unwarranted because the advisory committee's notes to Rule 45 make clear that when remote testimony is authorized under Rule 43(a), "the witness can be commanded to testify from any place described in Rule 45(c)(1)."

We invited the bankruptcy court to respond to the Kirklands' mandamus petition, and it explained that it denied leave for the Kirklands to file a direct appeal because of the already long extended proceedings. But the bankruptcy court acknowledged that it would be appropriate for us "to exercise supervisory mandamus jurisdiction to resolve the undecided question of whether Civil Rule 45's geographical restriction applies where a witness is ordered to testify by means of remote video transmission from a location selected by the witness." For the same reasons that it articulated in denying the Kirklands' motions to quash, the bankruptcy court urged us to find that Rule 45's geographical limitations do not apply here. Pointing to a survey of bankruptcy attorneys and a working group convened by the Judicial Council of California, the bankruptcy court highlights that "the litigation landscape has permanently shifted towards the greater use of

videoconference technology" and that witnesses, court staff, attorneys, and judges have had positive experiences with remote testimony in court proceedings.

## II. DISCUSSION

Under the All Writs Act, we have authority to issue writs of mandamus to lower courts. 28 U.S.C. § 1651(a); *see Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). This authority "extends to those cases which are within [our] appellate jurisdiction although no appeal has been perfected." *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (quoting *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943)). While writs of mandamus are most often issued to district courts, bankruptcy courts "constitute a unit of the district court," 28 U.S.C. § 151, and we hear appeals from bankruptcy courts through several avenues. *See* 28 U.S.C. § 158(d). Therefore, structurally, our mandamus jurisdiction over bankruptcy courts mirrors our mandamus authority over district courts, and we can issue writs of mandamus directly to bankruptcy courts because they are courts within our appellate jurisdiction.

Mandamus is an "extraordinary remedy" appropriate only in "exceptional circumstances amounting to a judicial usurpation of power" or a "clear abuse of discretion." *Cheney*, 542 U.S. at 380 (internal quotation marks and citations omitted). In determining whether issuance of a writ of mandamus is appropriate, we weigh the five *Bauman* factors:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a

> way not correctable on appeal. (This
> guideline is closely related to the first.) (3)
> The district court's order is clearly erroneous
> as a matter of law. (4) The district court's
> order is an oft-repeated error, or manifests a
> persistent disregard of the federal rules. (5)
> The district court's order raises new and
> important problems, or issues of law of first
> impression.

*In re Mersho*, 6 F.4th 891, 897–98 (9th Cir. 2021) (quoting
*Bauman v. U.S. Dist. Ct.*, 557 F.2d 650, 654–55 (9th Cir.
1977)). This is not a mechanical analysis; we weigh the
factors holistically "to determine whether, on balance, they
justify the invocation of 'this extraordinary remedy.'" *In re
Sussex*, 781 F.3d 1065, 1071 (9th Cir. 2015) (citation
omitted). Moreover, issuance of mandamus relief is
discretionary; we are "neither compelled to grant the writ
when all five factors are present, nor prohibited from doing
so when fewer than five, or only one, are present." *Id.*; *see
also Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for
Dist. of Mont.*, 408 F.3d 1142, 1146 (9th Cir.
2005) ("[I]ndeed, the fourth and fifth will rarely be present
at the same time."). But absence of clear error as a matter of
law is dispositive and "will always defeat a petition for
mandamus." *See In re Williams-Sonoma*, 947 F.3d at 538
(citation omitted).

Mandamus relief can be appropriate to resolve novel and
important procedural issues. For example, in *Schlagenhauf
v. Holder*, the Supreme Court granted mandamus relief
where the petitioner asserted that a district court order
requiring a party to undergo a mental and physical
examination exceeded the district court's authority and "the

challenged order . . . appear[ed] to be the first of its kind in any reported decision in the federal courts under [the governing Federal Rule of Civil Procedure]." 379 U.S. 104, 110 (1964). We likewise have exercised mandamus authority to address "particularly important questions of first impression" regarding discovery, evidentiary, and other procedural issues. *Perry*, 591 F.3d at 1157 (listing cases); *see also In re U.S. Dep't of Educ.*, 25 F.4th 692, 705–06 (9th Cir. 2022) (issuing writ of mandamus to quash deposition subpoena); *Mondor v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 910 F.2d 585, 586–87 (9th Cir. 1990) (issuing writ of mandamus where district court's denial of petitioner's demand for a jury trial upon removal was inconsistent with the governing Federal Rule of Civil Procedure). Indeed, "[m]andamus is particularly appropriate when we are called upon to determine the construction of a federal procedural rule in a new context." *Valenzuela-Gonzalez v. U.S. Dist. Ct. for Dist. of Ariz.*, 915 F.2d. 1276, 1279 (9th Cir. 1990). Therefore, "[a]lthough 'the courts of appeals cannot afford to become involved with the daily details of discovery [or trial],' we may rely on mandamus to resolve 'new questions that otherwise might elude appellate review . . . .'" *Perry*, 591 F.3d at 1157 (citation omitted).

## A. Error

We start with the third *Bauman* factor because satisfaction of this factor "is almost always a necessary predicate for the granting of the writ." *In re U.S. Dep't of Educ.*, 25 F.4th at 698. The clear-error standard is highly deferential and typically requires prior authority from this court that prohibits the lower court's action. *In re Williams-Sonoma*, 947 F.3d at 538. However, this standard is met even without controlling precedent "if the 'plain text of the statute prohibits the course taken by the district court.'" *In re*

*Mersho*, 6 F.4th at 898 (quoting *Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 710 (9th Cir. 2009)); *see also In re U.S. Dep't of Educ.*, 25 F.4th at 698. We must be left with "a firm conviction that the [lower] court misinterpreted the law . . . or committed a clear abuse of discretion." *In re Walsh*, 15 F.4th 1005, 1009 (9th Cir. 2021) (second alteration in original) (internal quotation marks and citation omitted); *Valenzuela-Gonzalez*, 915 F.2d at 1279. We have also stated that "[w]here a petition for mandamus raises an important issue of first impression, . . . a petitioner need show only 'ordinary (as opposed to clear) error.'" *Barnes v. Sea Haw. Rafting, LLC*, 889 F.3d 517, 537 (9th Cir. 2018) (citation omitted); *see also Perry*, 591 F.3d at 1158–59; *In re Cement Antitrust Litig.*, 688 F.2d 1297, 1305–07 (9th Cir. 1982). We do not take the opportunity to address the difference between clear error and ordinary error here because we conclude that mandamus relief is warranted under either standard.

The issue raised by the Kirklands is narrow: whether Federal Rule of Civil Procedure 45(c)'s 100-mile limitation applies when a witness is permitted to testify by contemporaneous video transmission. As with a statute, we begin with the text and "give the Federal Rules of Civil Procedure their plain meaning." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 540 (1991) (citation omitted). If "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case" our inquiry ceases. *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002) (citation omitted). And while the Supreme Court has instructed that "[t]he Federal Rules of Civil Procedure should be liberally construed," it has also cautioned that "they should not be expanded by disregarding

plainly expressed limitations." *Schlagenhauf*, 379 U.S. at 121.

Federal Rule of Civil Procedure 45(c) defines the "place of compliance" for subpoenas and the geographical scope of a federal court's power to compel a witness to testify at a trial or other proceeding.[3] There are two metrics. First, a person can be commanded to attend trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A). Second, a person can be commanded to attend a trial "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) . . . would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(B). If a trial subpoena exceeds these geographical limitations, the district court "*must* quash or modify" the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(ii) (emphasis added).

Here, the trustee subpoenaed the Kirklands to testify at a trial in California where it is undisputed the Kirklands no longer live, work, or regularly conduct in-person business. Therefore, we focus on the first metric—Rule 45(c)(1)(A)'s 100-mile limitation. For in-person attendance, the plain meaning of this rule is clear: a person cannot be required to attend a trial or hearing that is located more than 100 miles from their residence, place of employment, or where they regularly conduct in-person business. The Federal Rules of Bankruptcy Procedure incorporate this same limitation: "Although [Bankruptcy] Rule 7004(d) authorizes nationwide service of process, [Federal Rule of Civil Procedure 45] *limits the subpoena power to the judicial*

---

[3] Rule 45 applies to subpoenas in bankruptcy proceedings. Fed. R. Bankr. P. 9016.

*district and places outside the district which are within 100 miles of the place of trial or hearing.*" Fed. R. Bankr. P. 9016 advisory committee's note to 1983 amendment (emphasis added). Thus, we have no difficulty concluding that the Kirklands could not be compelled to testify *in person* at a trial in California. The question here is how Rule 45(c) applies when a person is commanded to testify at trial *remotely*.

The trustee argues that Federal Rule of Civil Procedure 43(a) avoids Rule 45(c)'s 100-mile limitation as applied to remote testimony. Specifically, the trustee (and the bankruptcy court) assert that remote testimony moves the "place of compliance" under Rule 45(c) from the courthouse to wherever the witness is located, so long as that location is within 100 miles of the witness's home or place of business. Federal Rule of Civil Procedure 43, titled "Taking Testimony," provides that "testimony must be taken in open court" unless a federal statute or rule provides otherwise. Fed. R. Civ. P. 43(a). But it permits courts to allow remote testimony "[f]or good cause in compelling circumstances and with appropriate safeguards." *Id.*

On its face, Rule 43(a) does not address the scope of a court's power to compel a witness to testify or reveal any overlap with Rule 45. Rather, Rule 43(a) establishes *how* a witness must provide testimony at trial: "in open court" unless the law allows otherwise or there is sufficient basis for allowing remote testimony. *Id.* Stated another way, Rule 45(c) governs the court's power to require a witness to testify at trial, and Rule 43(a) governs the mechanics of how trial testimony is presented. And logically, determining the limits of the court's power to compel testimony precedes any determination about the mechanics of how such testimony is presented.

The trustee argues that the advisory committee's notes indicate that there is interplay between Rules 43 and 45 and that courts have the power to compel remote testimony beyond Rule 45(c)'s 100-mile limitation. We may look to the advisory committee's notes because they "provide a reliable source of insight into the meaning of a rule." *United States v. Vonn*, 535 U.S. 55, 64 n.6 (2002); *see also Tome v. United States*, 513 U.S. 150, 167 (1995) (Scalia, J., concurring) (recognizing the advisory committee's notes are "*the* most persuasive" authority on the meaning of the Federal Rules of Civil Procedure as "they display the 'purpose,' or 'intent,' of the draftsmen" (cleaned up)). Indeed, we considered the advisory committee's notes in interpreting the "undue burden or expense" clause in Rule 45(c)(1). *See Mount Hope Church v. Bash Back*, 705 F.3d 418, 425, 427–28 (9th Cir. 2012). However, it is the text of the rules that control, and "the [n]otes cannot . . . change the meaning that the Rules would otherwise bear." *Tome*, 513 U.S. at 168 (Scalia, J., concurring); *see also United States v. Bainbridge*, 746 F.3d 943, 947 (9th Cir. 2014).

The only express reference to interplay between Rules 43(a) and 45(c) is in the notes to Rule 45, which state: "When an order under Rule 43(a) authorizes testimony from a remote location, the witness can be commanded to testify from *any place described in Rule 45(c)(1)*." Fed. R. Civ. P. 45 advisory committee's note to 2013 amendment. This note does not do the work that the trustee contends it does. The *places* described in Rule 45(c)(1) are "a trial, hearing, or deposition" that are located within prescribed geographical proximity to where the witness lives, works, or conducts in-person business. Fed. R. Civ. P. 45(c)(1). The note does not state that Rule 43(a) changes the "place described in Rule 45(c)(1)" from the location of the proceedings to the location

of the witness. And even if it did, it would not control because it would be contrary to the text of Rule 45(c)(1). *Tome*, 513 U.S. at 168 (Scalia, J., concurring); *Bainbridge*, 746 F.3d at 947. The note clarifies that Rule 45(c)'s geographical limitations apply even when remote testimony is allowed, and a witness is not required "to attend" a trial or other proceedings in the traditional manner.

The advisory committee's notes to Rule 43 reinforce this conclusion by explaining that remote testimony is the exception, and live, in-person testimony is strongly preferred. *See* Fed. R Civ. P. 43(a) advisory committee's note to 1996 amendment. These notes state: "The importance of presenting live testimony *in court* cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling." *Id.* (emphasis added); *see also Draper v. Rosario*, 836 F.3d 1072, 1081–82 (9th Cir. 2016) (holding the district court properly disallowed remote video testimony under Rule 43 given the importance of "live testimony in court" (citing Fed. R Civ. P. 43(a) advisory committee's note to 1996 amendment)). These notes further instruct that "[t]he most persuasive showings of good cause and compelling circumstances [justifying remote testimony] are likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident or illness, but remains able to testify from a different place." Fed. R Civ. P. 43(a) advisory committee's note to 1996 amendment. "A party who could reasonably foresee the circumstances offered to justify transmission of testimony will have special difficulty in showing good cause and the compelling nature of the circumstances." *Id.* The strong preference for in-person testimony would be greatly undermined if the rules were interpreted to impose fewer limits on a court's power to

compel remote testimony than on its power to compel in-person testimony.

Federal Rule of Civil Procedure 32(a)(4) also supports the conclusion that the Kirklands fall outside the bankruptcy court's subpoena power because it defines witnesses who are "more than 100 miles from the place of . . . trial" as "unavailable." Again, there is no indication in this rule that the geographical limitation can be recalibrated under Rule 43(a) to the location of a remote witness rather than the location of trial, nor is there any indication that courts can avoid the consequences of a witness's unavailability by ordering remote testimony. The fact remains that *all* witnesses—even those appearing remotely—must be compelled to appear, and a court can only compel witnesses who are within the scope of its subpoena power. Rule 43 does not give courts broader *power* to compel remote testimony; it gives courts *discretion* to allow a witness otherwise within the scope of its authority to appear remotely if the requirements of Rule 43(a) are satisfied. That is, neither the text of the rules nor the advisory committee's notes establish that the 100-mile limitation is inapplicable to remote testimony or that the "place of compliance" under Rule 45 changes the location of the trial or other proceeding to where the witness is located when a witness is allowed to testify remotely.

No doubt there is intuitive appeal to the trustee's argument and bankruptcy court's view that the "place of compliance" under Rule 45(c) should be based on where the witness is located given that a primary concern underlying the Rule's geographical limitations is unfairly burdening witnesses with travel, *see generally* Fed. R. Civ. P. 45(c) advisory committee's notes to 1991 and 2013 amendments, but grafting this interpretation onto Rule 45(c) is unfounded

for several reasons. First, it would essentially render Rule 45(d)(3)(A)(ii)—the requirement that courts quash subpoenas that reach "beyond the geographical limits specified in Rule 45(c)"—a nullity as related to remote testimony. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (citations omitted)). Rule 45(d)(3)(A)(ii) plainly instructs that courts *must* "quash or modify" subpoenas that exceed Rule 45(c)'s "geographical limits," reinforcing the conclusion that these limits define the scope of a court's *power* to compel a witness to participate in a proceeding, *see Hill v. Homeward Residential*, 799 F.3d 544, 553 (6th Cir. 2015) (concluding Rule 45 and its "geographic limitations" should be interpreted and enforced "as written").

Second, interpreting "place of compliance" as the witness's location when the witness testifies remotely is contrary to Rule 45(c)'s plain language that trial subpoenas command a witness to "attend *a trial*." Fed. R. Civ. P. 45(c)(1) (emphasis added). A trial is a specific event that occurs in a specific place: where the court is located. *See* Fed. R. Civ. P. 77(b) ("Every trial on the merits must be conducted in open court and, so far as convenient, in a regular courtroom."). No matter where the witness is located, how the witness "appears," or even the location of the other participants, *trials* occur in a court.[4] This concept

---

[4] It is nonsensical to say that a trial is occurring in a witness's living room when a witness is allowed to appear "by contemporaneous transmission" but that a trial is occurring in a courtroom the rest of the time. *See* Fed. R. Civ. P. 43(a).

is expressed in Rule 43(a)'s requirement that witnesses—even remote witnesses—must provide their testimony "in open court." *Id.* For this reason, application of Rule 45(c)'s 100-mile limitation to both trial and deposition subpoenas is not internally inconsistent because unlike trials, there is no ordinary or mandated location for depositions. The "place of compliance" for a deposition subpoena can be any appropriate location "within 100 miles of where the [witness] resides . . . ." Fed. R. Civ. P. 45(c)(1)(A).[5]

Perhaps one could argue that the "place" of trial, like other proceedings, is changing with modern technology. But we "generally seek[] to discern and apply the ordinary meaning of [a text] at the time of [its] adoption," *BP P.L.C. v. Mayor and City Council of Balt.*, 141 S. Ct. 1532, 1537 (2021), and there is no indication that Rule 45's reference to attending "a trial" was intended to refer to anything other than the location of the court conducting the trial. *Cf. Valenzuela-Gonzalez*, 915 F.2d at 1281 ("Absent a determination by Congress that closed circuit television may satisfy the presence requirement of the [criminal] rules, we are not free to ignore the clear instructions of [the] Rules."). Indeed, the advisory committee reinforced the importance of focusing on the location of the proceeding in discussing the 2013 amendment to Rule 45 that resolved a split in authority about whether a party (as opposed to a non-party) who resided more than 100 miles from where the trial was held could be compelled to testify: "These changes resolve a conflict that arose after the 1991 amendment about a court's

---

[5] *See also* Fed. R. Civ. P. 45(c)(2) (providing that "[a] subpoena may command . . . production of documents . . . or tangible things *at a place within 100 miles of*" the person's residence or place of business (emphasis added)).

authority to compel a party or party officer to travel long distances to testify at trial; such testimony may now be required only as specified in new Rule 45(c)."

Third, if the "place of compliance" for a trial subpoena could change from the courthouse to the witness's location, there would be no reason to consider a long-distance witness "unavailable" or for the rules to provide an alternative means for presenting evidence from long-distance witnesses that are not subject to the court's subpoena power. Courts could simply find, as the bankruptcy court did here, that live testimony from a witness located outside the geographical limitations of Rule 45 was nonetheless necessary, which constitutes "good cause in compelling circumstances" to justify compelling their remote testimony. Fed. R. Civ. P. 43(a).

Here, the trustee moved in limine to prevent BC Trust from introducing transcripts of the Kirklands' prior sworn testimony at trial as inadmissible hearsay. BC Trust argued that the transcripts were admissible because the Kirklands are not subject to the bankruptcy court's subpoena power and are therefore "unavailable" under Federal Rule of Evidence 804(a)(5). The bankruptcy court concluded that the transcripts were inadmissible because the Kirklands' unavailability was "engineered by the BC Trust for purely strategic purposes." *See* Fed. R. Civ. P. 32(a)(4)(B) (a witness's deposition transcript may not be used at trial if "the witness's absence was procured by the party offering the deposition"); Fed. R. Evid. 804(a) (a prior sworn statement of an unavailable witness is not admissible "if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying"). We need not address the validity of this evidentiary ruling because it is

immaterial to the question before us regarding the bankruptcy court's subpoena power. Whether or not the Kirklands are properly considered "unavailable" for evidentiary purposes, it is undisputed that they reside and work more than 100 miles from the bankruptcy court conducting the subject trial.

In sum, accepting the trustee's and bankruptcy court's reasoning in this case would stretch the federal subpoena power well beyond the bounds of Rule 45, which focuses on the *location of the proceeding* in which a witness is compelled to testify.

Before the proliferation of videoconference technology, Rule 45's strict geographical limitation was simple: if a witness was located further from the courthouse than Rule 45 proscribes, the witness could not be compelled to testify at trial. *See, e.g.*, *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1019 (9th Cir. 2004) (recognizing that a witness who lived more than 100 miles from the court was "outside of the court's subpoena power" and therefore "unavailable" under Federal Rule of Civil Procedure 32 and Federal Rule of Evidence 804); *McGill v. Duckworth*, 944 F.2d 344, 353–54 (7th Cir. 1991) (noting that the court's subpoena power to compel trial witnesses is "limited to its district and a 100-mile radius around the courthouse," and that a court does not have any "'inherent powers' to compel the attendance of a witness who is outside the court's subpoena power"), *overruled on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994); *In re Guthrie*, 733 F.2d 634, 637 (4th Cir. 1984) ("[A] nonparty witness outside the state in which the district court sits, and not within the 100-mile bulge, may not be compelled to attend a hearing or trial, and the only remedy available to litigants, if the witness will not attend voluntarily, is to take his deposition . . . ."); *Jaynes v.*

*Jaynes*, 496 F.2d 9, 10 (2nd Cir. 1974) (noting that district courts have the power only to subpoena witnesses in civil cases who "reside within the district or without the district but within 100 miles of the place of hearing or trial"). While technology and the COVID-19 pandemic have changed expectations about how legal proceedings can (and perhaps should) be conducted, the rules defining the federal subpoena power have not materially changed. We are bound by the text of the rules. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) ("The text of a rule . . . limits judicial inventiveness."). Notwithstanding the bankruptcy court's positive experiences with videoconferencing technology, any changes to Rule 45, is one "for the Rules Committee and not for [a] court." *Swedberg v. Marotzke*, 339 F.3d 1139, 1145 (9th Cir. 2003); *see also In re Cavanaugh*, 306 F.3d 726, 731–32 (9th Cir. 2002) ("Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals.").

Therefore, we conclude that the bankruptcy court "misinterpreted the law" in its construction of Rule 45(c) as applied to witnesses allowed to testify remotely under Rule 43(a) and the third *Bauman* factor weighs in favor of granting mandamus relief. *In re Walsh*, 15 F.4th at 1009 (internal quotation marks and citation omitted); *see also In re Cavanaugh*, 306 F.3d at 731–32 (issuing the writ where the district court "went off the statutory track").

## B. Important Issue of First Impression

The fifth *Bauman* factor also weighs in favor of granting mandamus relief. This factor "considers whether the petition raises new and important problems or issues of first impression." *In re Mersho*, 6 F.4th at 903; *see also In re*

*Cement Antitrust Litig.*, 688 F.2d at 1304. As previously stated, "[m]andamus is particularly appropriate when we are called upon to determine the construction of a federal procedural rule in a new context." *Valenzuela-Gonzalez*, 915 F.2d at 1279. Whether a witness can be compelled to testify remotely despite falling outside Rule 45's geographic limitations is an important issue given the recent proliferation of videoconference technology in all types of judicial proceedings. Indeed, the bankruptcy court acknowledges that this issue is likely to arise with greater frequency following the COVID-19 pandemic.

Our system's previously noted strong preference for live, in-person testimony has a long pedigree. *See Crawford v. Washington*, 541 U.S. 36, 43 (2004) ("The common-law tradition is one of live testimony in court subject to adversarial testing[.]"); *Coy v. Iowa*, 487 U.S. 1012, 1017–20 (1988) (explaining—in terms of the Confrontation Clause—that the right to "face-to-face confrontation" and cross-examination "ensure the integrity of the factfinding process" (cleaned up) (citation omitted)); *Donnelly v. United States*, 228 U.S. 243, 273–76 (1913) (discussing the important safeguards associated with "in person" testimony); *United States v. Thoms*, 684 F.3d 893, 905 (9th Cir. 2012) (noting "the Supreme Court and our court have repeatedly cited the value of live testimony with respect"). The rules were written with both an understanding of and agreement with this historical view. *See* Fed. R. Civ. P. 43(a) advisory committee's note to 1996 amendment ("The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition."). As evidenced by

the diverging views in the district courts, application of the rules to testimony provided via contemporaneous video transmission has been perplexing and likely will continue to be so. Therefore, we conclude that the issue raised by the Kirklands' petition is ripe for our consideration and is "a new and far reaching question of major importance . . . [the] resolution [of which] would add importantly to the efficient and orderly administration of the district courts." *In re Cement Antitrust Litig.*, 688 F.2d at 1305; *see also Perry*, 591 F.3d at 1158–59; *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Richey*, 510 F.2d 1239, 1243 (D.C. Cir. 1975) (recognizing that mandamus review is appropriate "where the decision will serve to clarify a question that is likely to confront a number of lower court judges in a number of suits before appellate review is possible, as, for example, where the district judges are in error, doubt, or conflict on the meaning of a rule of procedure").

## C. Remaining *Bauman* Factors

The third and fifth *Bauman* factors are sufficient on their own to warrant granting mandamus relief in this case. *See In re Sussex*, 781 F.3d at 1076 (issuing the writ based on a strong showing of *Bauman* factors three and five); *Portillo v. U.S. Dist. Ct.*, 15 F.3d 819, 822 (9th Cir. 1994) (similar). Nonetheless, we consider the remaining factors.

### 1. Alternative Means of Relief

The first *Bauman* factor considers whether a petitioner seeking mandamus relief has other means of attaining the desired relief. *In re United States*, 884 F.3d 830, 834 (9th Cir. 2018). The availability of relief through the ordinary review process weighs against granting mandamus relief. *See In re Orange, S.A.*, 818 F.3d 956, 963–64 (9th Cir.

2016); *Cole v. U.S. Dist. Ct. for the Dist. of Idaho*, 366 F.3d 813, 820 (9th Cir. 2004).

Here, the Kirklands' challenge to their subpoenas is a collateral matter, and an "order[] denying a motion to quash a Rule 45 subpoena generally cannot be immediately appealed." *United States v. Acad. Mortg. Corp.*, 968 F.3d 996, 1006 (9th Cir. 2020). Instead, absent discretionary interlocutory review, discussed further below, to obtain effective review a litigant generally must "either seek mandamus, or disobey the order and then appeal the resulting contempt citation." *In re Grand Jury Investigation*, 966 F.3d 991, 994 (9th Cir. 2020). Because we have not required a litigant to "incur a sanction, such as contempt, before it may seek mandamus relief," there is support for the first *Bauman* factor. *United States v. Fei Ye*, 436 F.3d 1117, 1122 (9th Cir. 2006); *see also SG Cowen Sec. Corp. v. U.S. Dist. Ct. for N. Dist. of Cal.*, 189 F.3d 909, 913–14 (9th Cir. 1999) (noting third parties "could not be expected" to seek review through contempt proceedings).

However, the availability of interlocutory review warrants specific consideration here given that this petition arises from a bankruptcy case. In the ordinary civil case, interlocutory appellate review is available by certification from the district court under 28 U.S.C. § 1292. *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1130 (9th Cir. 2022). Under this statute, if the district court certifies that an interlocutory order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation," we have discretion to exercise interlocutory review. 28 U.S.C. § 1292(b); *Bank of N.Y. Mellon v. Watt*, 867 F.3d 1155, 1159 (9th Cir. 2017). We

have held that failing to seek certification under § 1292(b) does not bar granting mandamus relief. *Cole*, 366 F.3d at 817 n.4; *see also In re Orange, S.A.*, 818 F.3d at 963.

In bankruptcy cases, there are three additional means for seeking interlocutory review. 28 U.S.C. § 158(a)(3), (b)(1), (d)(2); *see also Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 252–54 (1992). Primarily, a party may seek leave to appeal an interlocutory bankruptcy court order from (1) the district court, or (2) "with the consent of all the parties," from the BAP. 28 U.S.C. § 158(a)(3), (b)(1).[6] We also have discretion to hear interlocutory appeals from bankruptcy court orders if a lower court grants certification under 28 U.S.C. § 158(d)(2). *Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015); *Bank of N.Y. Mellon*, 867 F.3d at 1159. Under § 158(d)(2), the bankruptcy court, the district court, or the BAP may, "acting on its own motion or on the request of a party," certify that:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance; (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; *or* (iii) an immediate appeal from the judgment, order, or decree may materially advance the

---

[6] Because obtaining interlocutory review from the BAP under § 158(b)(1) depends on agreement of the parties, we focus our analysis on the Kirklands' ability to seek interlocutory review from the district court under § 158(a)(3).

> progress of the case or proceeding in which
> the appeal is taken.

28 U.S.C. § 158(d)(2)(A)(i)–(iii) (emphasis added).

Here, the Kirklands moved the bankruptcy court to certify an interlocutory appeal to this court under § 158(d)(2) and alternatively to the district court under § 158(a)(3). The bankruptcy court denied both requests. But the Kirklands did not seek leave from the district court to file an interlocutory appeal.[7] The Kirklands justify this failure by asserting that "[t]here is no exhaustion requirement" for seeking mandamus relief and that decisions from the district court and the BAP bind only the parties and provide no procedural guidance to lower courts. The Kirklands' argument fails to appreciate that the availability of alternate means for obtaining relief weighs against mandamus relief where the Supreme Court has clearly instructed that the writ of mandamus is not to be used "as a substitute for the regular appeals process." *Cheney*, 542 U.S. at 380–81. And the district court and the BAP, not this court, are chiefly charged with reviewing interlocutory bankruptcy orders. *See* 28 U.S.C. § 158(a)(3); *Bullard* 575 U.S. at 508. Thus, we do not treat lightly the Kirklands' failure to seek interlocutory

---

[7] Although the bankruptcy court stated that it "can certify an appeal of an interlocutory order to the [d]istrict [c]ourt rather than [this court]" under § 158(d)(2)(A), there is no support for that assertion. Certification under § 158(d)(2) is directed only to a court of appeals. *Bullard*, 575 U.S. at 508. Interlocutory review in the district court arises under § 158(a)(3), which is a separate procedure. Leave under § 158(a)(3) must be sought *from the district court*, not the bankruptcy court. *See* 28 U.S.C. § 158(a)(3); Fed. R. Bankr. P. 8004 (outlining procedure for seeking leave from the district court or the BAP to appeal an interlocutory bankruptcy order). Thus, the Kirklands erroneously sought leave to seek interlocutory review in the district court from the bankruptcy court.

review in the district court. But we nonetheless conclude that their failure does not mandate denial of mandamus relief under the unique circumstances of this case.[8]

The Kirklands did seek relief from the district court related to the specific issue raised in this petition by filing a motion in the district court. We previously recognized a narrow futility exception to the no-alternate-means-of-relief limitation. *See Cole*, 336 F.3d at 820. In *Cole*, the petitioner failed to seek reconsideration of a magistrate judge's non-dispositive order with the district court under 28 U.S.C. § 636(b)(1)(A). *Id.* at 816. We explained that the "general rule" that mandamus relief is warranted only where the petitioner has no other means for seeking relief "may give way to an exception if the petitioner can convincingly demonstrate that reconsideration by the district court would have been futile." *Id.* at 820; *see also id.* at 819 n.9 (discussing a Third Circuit case that recognized "a narrow exception to the general rule requiring review of the magistrate judge's non-dispositive orders by the district court before mandamus relief can be issued"). But we

---

[8] We do not address whether review by the district court under 28 U.S.C. § 158(a)(3) is sufficiently analogous to certification to the court of appeals under § 1292(b) such that our rule that "the possibility of certification, standing alone, is not a bar to mandamus relief" should also apply in this context. *In re Orange, S.A.*, 818 F.3d at 963; *see In re Belli*, 268 B.R. 851, 858 (B.A.P. 9th Cir. 2001) ("We look for guidance to standards developed under 28 U.S.C. § 1292(b) to determine if leave to appeal should be granted [under § 158(a)(3)], even though the procedure is somewhat different."); *Ad Hoc Comm. of Holders of Trade v. PG&E Corp.*, 614 B.R. 344, 351 (N.D. Cal. 2020) (same); *see also* 1 *Collier on Bankruptcy* ¶ 5.08[4] (16th ed. 2023) (noting that § 1292(b) is the closest analogy to seeking leave to appeal under § 158(a)(3)).

ultimately concluded that the petitioner failed to establish futility in that case. *Id.* at 820.

Unlike in *Cole*, where the petitioner had an "absolute right to seek district court reconsideration of the magistrate judge's decision" and did not pursue *any* review before seeking mandamus relief in this court, *id.* at 816, 818, the Kirklands did attempt to obtain review of the bankruptcy court's decision before seeking relief in this court. Mrs. Kirkland, as trustee of BC Trust, unsuccessfully sought review in the district court of the scope of the bankruptcy court's subpoena power by seeking reconsideration of the district court's reference of BC Trust's case to the bankruptcy court. Because the district court denied the motion for reconsideration, the Kirklands argue that requiring them to seek further interlocutory review in the district court would be futile. We agree.

When the district court referred the claims against BC Trust to the bankruptcy court, it stated that the bankruptcy court could "rely on the testimony provided during the jury trial" in Mr. Kirkland's prior trial conducted in district court but that "[i]f the [b]ankruptcy [c]ourt determines that it needs substantial testimony from non-parties that would not be necessary if th[e district] [c]ourt were to try the matter (presumably because the [district c]ourt observed the testimony given at the jury trial) . . . , the parties may seek reconsideration of [the reference] on that ground." Mrs. Kirkland sought reconsideration from the district court after the bankruptcy court ruled that BC Trust could not introduce transcripts of the Kirklands' prior testimony and required the Kirklands to present live testimony. Specifically, the motion for reconsideration argued, in part, that the Kirklands "cannot be compelled to appear at trial because they reside in the U.S. Virgin Islands, which is more than 100 miles

from the Court." The district court denied reconsideration, stating that if the Kirklands "fail[] to attend trial, the [b]ankruptcy [c]ourt is entitled to make whatever adverse findings it sees fit." Because the district court heard and rejected the Kirklands' argument challenging the validity of their trial subpoenas, we are persuaded that requiring the Kirklands to seek interlocutory review in the district court likely would be futile.

For these reasons, we conclude that the first *Bauman* factor does not weigh against granting mandamus relief in this case.[9]

## 2. Likelihood of Irreparable Harm

Our inquiry under the second *Bauman* factor is closely related to the first— the Kirklands must demonstrate that they will suffer harm that cannot be remedied through normal post-judgment appeal. *See In re Orange*, *S.A.*, 818 F.3d at 963–64. The Kirklands contend that they will be harmed by having to testify at BC Trust's trial after they have already given testimony in the underlying proceeding twice. They also contend that testifying remotely would be "inadequate[]," and that if they are forced to wait to challenge the bankruptcy court's denial of their motions to quash until after BC Trust's trial, the error of being wrongly forced to testify will be irremediable.

---

[9] Even if the first *Bauman* factor did weigh against mandamus relief, we have granted mandamus relief where this factor is lacking, especially where "the fifth *Bauman* factor (novel issue of circuit law) is satisfied," as it is here. *Cole*, 366 F.3d at 820 n.10; *see, e.g.*, *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1099–100 (9th Cir. 1999) (issuing the writ where the second, third, and fifth *Bauman* factors were satisfied, despite finding that the "first *Bauman* factor tip[ped] against mandamus relief" because a direct appeal was available).

Recently, we concluded that the harm suffered from having to comply with an invalid deposition subpoena was "the intrusion of the deposition itself," which was "not correctable on appeal, even if [the deponent's] testimony is excluded at trial." *In re U.S. Dep't of Educ.*, 25 F.4th at 705. The same reasoning applies here. If the Kirklands comply with their subpoenas and testify at trial, the violation of having to give testimony when the bankruptcy court has no authority to compel them to do so cannot be fully remedied post-judgment. Therefore, the second *Bauman* factor also supports granting mandamus relief.

### 3. Oft-Repeated Error

Finally, the fourth *Bauman* factor "looks to whether the case involves an 'oft-repeated error.'" *In re Mersho*, 6 F.4th at 903 (citation omitted). The fourth and fifth factors are rarely present at the same time. *Id.*; *Admiral Ins. Co. v. U.S. Dist. Ct. for Dist. of Ariz.*, 881 F.2d 1486, 1491 (9th Cir. 1989). However, we have recognized that the fourth and fifth factors can both be present when a procedural rule is being applied in a new context because this situation presents "a novel question of law that is simultaneously likely to be 'oft-repeated.'" *Valenzuela-Gonzalez*, 915 F.2d at 1279; *see also Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 711 (9th Cir. 2009). Because we conclude that the fifth factor strongly weighs in favor of exercising our mandamus authority, we do not analyze the fourth factor in depth and simply reiterate that, given the importance and novelty of the issue presented and the ongoing confusion in the district courts, providing guidance regarding Rule 45's application to remote testimony is warranted, especially where this collateral issue is likely to continue to evade review. *See Perry*, 591 F.3d at 1159.

### III. CONCLUSION

We conclude that mandamus relief is warranted. We have not previously addressed the application of Rule 45(c)'s geographical limitations to testimony provided via remote video transmission, which is a question of increasing import given the recent proliferation of such technology in judicial proceedings. Moreover, we conclude that despite changes in technology and professional norms, the rule governing the court's subpoena power has not changed and does not except remote appearances from the geographical limitations on the power to compel a witness to appear and testify at trial. Because the bankruptcy court concluded otherwise, we grant the Kirklands' petition and issue a writ of mandamus ordering the bankruptcy court to quash their trial subpoenas. *See Cheney*, 542 U.S. at 380.

**PETITION GRANTED.**[10]

---

[10] The trustee's Request for Judicial Notice, Dkt. No. 10, is DENIED.